UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
EDDIE C.,[1]

Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
25-CV-4981 (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On September 9, 2025, Plaintiff filed this action, seeking review of the denial of his application for Social Security Disability Insurance benefits by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Compl., ECF 1. Both parties have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Pl. Mot. for J. on the Pleadings ("Pl. Mot."), ECF 6; Def. Cross-Mot. for J. on the Pleadings ("Def. Mot."), ECF 7; *see also* Pl. Mem. of Law ("Pl. Mem."), ECF 6-1; Def. Mem. of Law ("Def. Mem."), ECF 7-1. For the following reasons, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion is denied.

**PROCEDURAL HISTORY**

Plaintiff filed a Title II application for Social Security Disability Insurance benefits on August 8, 2022, alleging disability as of July 19, 2021, due to a number of

---

[1] "The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials." *Yolanda C. v. Comm'r of Soc. Sec.*, No. 2:24-CV-09617 (CLP), 2026 WL 1265496, at *1 n.1 (D.N.J. May 8, 2026).

ailments, including chronic pain and the following impairments: lumbar disc disease following surgeries, a left knee meniscal tear, carpal tunnel syndrome, and obesity. Administrative Record[2] ("R."), 17, 20, 189–96, 224. Plaintiff's application for benefits was first denied in December 2022, and again on reconsideration in June 2023. *Id.* at 91–101, 106–08. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 6, 2023; the record was later supplemented by an additional interrogatory to a vocational expert. *Id.* at 35–60, 109, 304–10.

On October 18, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") and therefore was not entitled to Social Security Disability Insurance benefits. *Id.* at 14–28. On August 20, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of 42 U.S.C. § 405(g). Compl., ECF 1, ¶ 6. This appeal followed.[3]

## LEGAL STANDARDS

### I. Qualifying for Social Security Disability Insurance Benefits

To qualify for Social Security Disability Insurance benefits under Title II, an individual must (i) be insured for disability benefits; (ii) not have attained retirement age; (iii) be a U.S. citizen or a foreign national under certain circumstances not relevant

---

[2] The Administrative Record is filed within ECF 5. Citations to the record are preceded by R., with reference to the page of the record without regard to which sub-document within ECF 5.

[3] The Court notes that under 42 U.S.C. § 405(g), an individual challenging an action of the Commissioner has 60 days to commence a civil action, from the date that the notice of decision was mailed. Given that this case was initiated on September 9, 2025, less than one month after the decision of the Appeals Council, this action was timely filed.

The Court also notes that the parties in this case have consented to Magistrate Judge jurisdiction. *See* Consent, ECF 4; *see also* Jan. 8, 2026 ECF Consent Order.

here; (iv) have applied for disability benefits; and (v) have a "disability." 42 U.S.C. § 423(a)(1). The Act defines disability to mean that a claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (per curiam). The Act further provides that an "individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that [the claimant] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see also Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000).

The social security regulations prescribe a five-step sequential analysis to determine if a claimant is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The Second Circuit recently described this process as follows:

> At the first step, the Commissioner considers the claimant's work activity, if there is any, and determines whether the claimant is engaged in substantial gainful activity. [20 C.F.R.] § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to the second step and considers the medical severity of the claimant's impairment or combined impairments. *Id.* § 404.1520(a)(4)(ii). At step three, the Commissioner assesses whether the claimant's impairment or combined impairments meet or equal one of the listings in appendix 1 of Part 404, Subpart P (the "Listed Impairments"). *Id.* § 404.1520(a)(4)(iii). If the claimant has such an impairment or combination of impairments and satisfies the duration requirement, the Commissioner will find the claimant disabled. *See id.*; *see also id.* § 404.1509. If the Commissioner does not find the claimant disabled at step three, the Commissioner considers the claimant's residual functional capacity ("RFC") and past relevant work to determine if the claimant can still perform her past relevant work. *Id.* § 404.1520(a)(4)(iv).
>
> If the claimant cannot continue her past relevant work, at step five, the Commissioner considers whether she can nevertheless perform other

work — taking into account the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v).

*Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 147–48 (2d Cir. 2024) (footnote omitted); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The claimant bears the burden of proof at steps one through four, while at step five, "the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Rubin*, 116 F.4th at 148 (quotation marks omitted).

On June 22, 2024, the Social Security Administration ("SSA") issued two emergency messages concerning reliance on obsolete jobs at the fifth step of the analysis. In one of the emergency messages, EM-24026, the SSA identified 114 occupations from the Dictionary of Occupational Titles ("DOT") that exist in very limited numbers and prohibited reliance on these positions to determine that an individual can perform other work in the national economy; these positions are not relevant to this case. The second message, EM-24027, set forth "heightened evidentiary and articulation requirements" as to certain DOT occupations, including one relied upon in this case (the position of document preparer, DOT #249.587-018[4]). SSA,

---

[4] The DOT defines the job of "document preparer" (DOT #249.587-018) as follows:

Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using

Archived Emergency Message EM-24027, *available at* https://secure.ssa.gov/apps10/referencearchive.nsf/links/06212024022159PM [https://perma.cc/Q3UT-9D8A] (last visited Sept. 22, 2026) (referred to herein as "Archived EM-24027" or the "Emergency Message").[5] The Emergency Message stated as follows:

> An adjudicator may not cite any of the DOT occupations listed below to support a framework "not disabled" determination or decision without additional evidence from a [Vocational Specialist ("VS")] or [Vocational Expert ("VE")] supporting the adjudicator's conclusion that, as the occupation is currently performed:
>
> - Its requirements are consistent with the individual's RFC, and
> - It exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant.

*Id.* The Emergency Message specifically states that "[t]he determination or decision must include or summarize the VS or VE's evidence that supports" the adjudicator's findings or "adjudicators may support the determination or decision with other occupation(s) appropriate to the facts of the claim." *Id.*

---

photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

U.S. Dep't of Lab., Dictionary of Occupational Titles, Clerical and Sales Occupations, *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02C (last visited Sept. 22, 2026).

[5] The SSA issued a revised version of EM-24027 on January 6, 2025, which is consistent with the above-quoted language. *See* SSA, Emergency Message EM-24027 REV, *available at* https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last visited Sept. 22, 2026). The Court cites the original version of the Emergency Message herein since it was in effect at the time the ALJ rendered the decision in this case.

## II. Standard of Review

A district court reviewing a final decision of the Commissioner may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g), sentence four. A motion for judgment on the pleadings should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam); *see also* Fed. R. Civ. P. 12(c).

Under § 405(g), the federal courts' review of final SSA decisions is limited. *See Rubin*, 116 F.4th at 154. In conducting this review, the court must determine whether: (1) the Commissioner's decision was based on the correct legal standard, and (2) the Commissioner's factual findings were "supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (per curiam); *see Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022); *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). The court does not substitute its own judgment for that of the Commissioner's or "determine *de novo* whether the claimant is disabled." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (cleaned up); *see Greek*, 802 F.3d at 374 ("The ultimate determination of whether a person has a disability within the meaning of the Act belongs to the Commissioner.").

Inquiry into legal error requires the court to determine whether "the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted and alterations in original). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)

(citations omitted). Remand may also be appropriate where it cannot be "determine[d] with certainty from the record" whether the ALJ applied the correct legal standard. *Johnson v. Bowen*, 817 F.2d 983, 987 (2d Cir. 1987); *see also Claudette M. S. v. Comm'r of Soc. Sec.*, No. 6:24-CV-01477 (MAD/TWD), 2026 WL 1024064, at *2 (N.D.N.Y. Jan. 30, 2026) ("[A] reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence."), *report and recommendation adopted sub nom. Claudette S. v. Bisignano*, 2026 WL 571251 (N.D.N.Y. Mar. 2, 2026).

"Before determining whether the Commissioner's final decision is supported by substantial evidence[,] the court must first be satisfied that the ALJ . . . completely developed the administrative record." *Kelly v. Comm'r of Soc. Sec.*, No. 20-CV-5318 (JS), 2024 WL 5120051, at *9 (E.D.N.Y. Dec. 16, 2024). "The ALJ has a well-established obligation to investigate and develop the record, even where a claimant is counseled — this has been described as a bedrock principle of Social Security law." *Wolken v. Bisignano*, No. 24-CV-8154 (LKE), 2026 WL 858609, at *5 (E.D.N.Y. Mar. 30, 2026) (quotation marks omitted). Accordingly, where the ALJ did not apply the correct legal standard or sufficiently develop the record, the case may be remanded for further proceedings. *See Sczepanski v. Saul*, 946 F.3d 152, 161–62 (2d Cir. 2020); *Daniels v. Kijakazi*, 617 F. Supp. 3d 180, 195 (S.D.N.Y. 2022).

In addition, "[t]o determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quotation marks omitted). The Supreme Court has observed that: "Substantial evidence . . . is 'more than a mere scintilla'"; it "means — and means only — 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Importantly, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and therefore, the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*.'" *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order)) (emphasis in *Bonet*); *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (holding that if the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review"). This is a "highly deferential standard of review." *Negron v. Berryhill*, 733 F. App'x 1, 2 (2d Cir. 2018) (summary order).

## THE ADMINISTRATIVE RECORD & THE ALJ'S DECISION

### I. Plaintiff's Background

Plaintiff was born in July 1985 and was 36 years old on the alleged disability onset date. R. 26. Plaintiff has at least a high school education, and was previously employed in various jobs, including as a locksmith, taxi driver, auto technician, garbage collector driver, cement truck driver, and delivery route truck driver. *Id.* Plaintiff alleges that he experienced a work-related accident in July 2021, which led to "chronic low back pain, spasms, motor weakness in the left leg, and gait abnormality, despite undergoing two spine surgeries," and that he has ongoing herniation at the L5-S1 joint that contacts the nerve roots "and that he continues to have problems with sitting, walking, and lifting." *Id.* at 22. Plaintiff has undergone treatment with various providers, including by Dr. Victor Katz, MD, as well as chiropractic treatment, physical therapy, and

injections, and he has been evaluated by multiple medical examiners at various times. *Id.* at 23–26 (discussing some of the medical evidence); *see, e.g.*, *id.* at 369–77, 1140–63 (medical evidence regarding Dr. Katz).

Plaintiff has not been engaged in substantial gainful activity since July 19, 2021. *Id.* at 19. He asserts that he continues to be physically limited. Specifically, he contends that he can neither sit nor stand for more than 10 to 15 minutes at a time, that he cannot walk more than half of a block, that he uses a cane to ambulate, and that he cannot lift anything heavier than a gallon of milk, from waist height. Pl. Mem., ECF 6-1, at 2; *see also* R. 22, 54–55 (Plaintiff's testimony). Plaintiff also represents that although he is "able occasionally to help his wife wash the dishes . . . he cannot participate in other household chores such as cleaning, laundry, or grocery shopping" and that he has difficulty sleeping due to discomfort caused by his back pain. Pl. Mem., ECF 6-1, at 2; *see also* R. 55 (Plaintiff's testimony). The record includes voluminous medical evidence and treatment records, which the ALJ summarized in detail in the underlying decision, in finding that Plaintiff was unable to perform any past relevant work and in evaluating Plaintiff's RFC.[6] *See* R. 19–26.

## II. Vocational Expert Evidence

At the hearing, when presented with a hypothetical individual with Plaintiff's age, education, past jobs, and similar limitations, the VE testified that the types of work Plaintiff had done in the past would be precluded by his limitations, but that there are sedentary jobs in the national economy that such an individual could perform. *Id.* at 57.

[6] Given that this decision centers on whether the ALJ failed to adduce sufficient evidence that Plaintiff can perform other jobs in the national economy, *i.e.*, that the ALJ erred at step five of the sequential evaluation process, the Court declines to re-summarize the lengthy medical evidence. *See* R. 19–26 (ALJ's opinion summarizing and analyzing the medical evidence); Pl. Mem., ECF 6-1, at 4–7 (summarizing medical evidence); Def. Mem., ECF 7-1, at 3–15 (same).

Specifically, the VE testified that such jobs could include document preparer (as to which the VE testified there were approximately 46,000 jobs in the United States), touch-up screener (2,600 jobs), and addressing clerk (8,300 jobs). *Id*. The VE further testified that a typical workplace would permit "no more than ten percent time off task" and, generally, no more than one absence per month, including coming in late or leaving early. *Id.* at 58. On cross-examination, when asked about the frequency with which an individual would have to reach, handle, finger, and feel with the dominant upper extremity to perform these jobs, the VE testified that each of the positions identified are rated as frequent for those functions, so if a person could only reach, handle, finger, and feel on an occasional basis, those jobs would be precluded. *Id.* at 59.

Approximately six months after the hearing, the ALJ sent a written interrogatory request to the VE, again presenting a hypothetical individual with limitations similar to Plaintiff's. *Id.* at 298–306. In the interrogatory questions, the ALJ asked the VE to identify sedentary jobs in the national economy that an individual with the same age, education, and work experience could perform, assuming that the individual could: "frequently reach, handle, finger, and feel with the right dominant upper extremity," and who could "occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and never work at unprotected heights," and that the individual could occasionally push/pull with the lower extremities and requires a cane for ambulation. *Id.* at 305. In a written response, dated June 5, 2024, the VE indicated that this individual could work as a document preparer (46,000 U.S. jobs), a table worker (2,700 U.S. jobs), or a touch-up screener (2,600 U.S. jobs). *Id.* Upon further inquiry concerning whether there were any conflicts between the occupational evidence the VE provided and the DOT, including "discrepancies regarding manipulative limitations with the right dominant upper

extremity and use of a cane for ambulation," the VE responded that the DOT and the Special Characteristics of Occupations ("SCO") "do not specifically address whether manipulation is with the dominant or non dominant upper extremity" and that the DOT/SCO do not address the use of a cane. *Id.* at 306; *see also id.* at 27 (discussion of the VE testimony in the ALJ's opinion). The VE further explained that the positions she cited are, based on her professional training and experience, jobs that can be performed with a cane for ambulation. *Id*. at 306. In addition, the VE indicated that, for the jobs that were identified, "[t]he worker is seated for the majority of the shift (6+ hours) and any items to be carried are minimal (i.e.[,] File folders) and can be carried in the free hand." *Id.* Concerning the document preparer position, which now involves conversion of print materials to digital materials, the VE stated that the position has materially changed compared to the occupational information contained in the DOT/SCO, in that the position was formerly performed using microfiche and microfilm, whereas the work is now performed using a scanner. *Id.*

**III. The ALJ's Decision**

As discussed above, the Act defines disability as an inability to engage in "any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death" or which has lasted or will last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A). To evaluate whether an individual qualifies for social security benefits, an ALJ applies the five-step inquiry set forth above.

In this case, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 19, 2021, the alleged onset date of his disability. R. 19. At step two, the ALJ found that Plaintiff has the following severe impairments: "lumbar disc disease status post surgeries, left knee meniscal tear, carpal tunnel

syndrome, and obesity." *Id.* at 20. At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of a Listed Impairment. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). At this stage of the analysis, the ALJ found that Plaintiff's degenerative disc disease did not meet the criteria for a Listed Impairment because the record did not support a finding that he "cannot use the upper extremities for manipulation required for basic work tasks because physical examinations did not show gross abnormalities of his hands or wrists and his hand and finger dexterity were intact." *Id.* The ALJ further found that Plaintiff had "the ability to drive a car, type on his cell phone, and button and zip clothing." *Id.* As for Plaintiff's left knee impairment, the ALJ found that it did not meet the criteria "for abnormality of a major joint in any extremity because there is no imaging or examination evidence documenting anatomical abnormality" and, although Plaintiff reported using a cane for back pain when walking outside, "the consultative medical examiner noted that he was able to ambulate throughout the examination with and without an assistive device." *Id.* at 21. At this stage, the ALJ evaluated Plaintiff's peripheral neuropathy and obesity, and concluded that these conditions, individually or when evaluated in combination with Plaintiff's other conditions, also did not "meet or equal the severity of an impairment described in Appendix 1." *Id.* In considering these conditions, the ALJ observed that the record showed that, although Plaintiff was treated for trigger finger and was tentatively diagnosed with carpal tunnel syndrome, "his hand and finger dexterity were intact during the consultative examination and he reported the ability to drive a car, type on his cell phone, and button and zip clothing." *Id.* As to obesity, the ALJ concluded that this condition, in combination with Plaintiff's other conditions, did not meet the criteria for a severe impairment, observing that "none of the claimant's treating or examining

physician[s] have suggested that obesity affects the claimant's overall condition," and that Plaintiff remained fully weightbearing and did not have abnormal neurological or musculoskeletal functioning. *Id.*

Having found that Plaintiff did not have a Listed Impairment or combination of impairments that met or was equal to a Listed Impairment, the ALJ went on to evaluate Plaintiff's RFC. *Id.* at 21–26. At this stage of the analysis, the ALJ found that Plaintiff has the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a),[7] concluding that Plaintiff:

> can frequently reach, handle, finger, and feel with the right upper extremity. He can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl but can never work at unprotected heights. He can occasionally push/pull with the lower extremities. He requires the use of a cane for ambulation.

*Id.* at 21. Having made this finding, the ALJ went on to step four of the analysis, to evaluate whether Plaintiff could perform any of his relevant past work. The ALJ answered this question in the negative, given the physical demands of his past employment as a delivery route driver, cement truck driver, garbage collector driver, auto technician, taxi driver, and locksmith. *Id.* at 26.

---

[7] The SSA regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). In addition, for sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

Finally, at step five, the ALJ found that there are jobs that exist in the national economy in sufficient numbers that Plaintiff could perform in light of the findings regarding his RFC. *Id.* at 26–27. Specifically, relying on testimony from the VE, including the VE's supplemental interrogatory answers, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 27.

**DISCUSSION**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that it does not properly apply the relevant legal standards. Pl. Mem., ECF 6-1, at 9–14. More specifically, Plaintiff contends that the ALJ erred at the fifth step of the sequential evaluation outlined above, and that the ALJ did not properly weigh the findings and evidence offered by Dr. Katz, his treating physician, while relying on the assessment of a consulting examiner and other consultants who examined Plaintiff. *Id.* at 11–12. Plaintiff further argues that the ALJ failed to meet its burden to adduce evidence that Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy. *Id.* at 10–11. As to Dr. Katz, Plaintiff notes that "[t]hroughout the entire period of 2022–23[,] Dr. Katz reported that the plaintiff [was] totally disabled." *Id.* at 11. Plaintiff argues that Dr. Katz's opinions should be given "substantial evidentiary weight by virtue of his medical expertise and his lengthy history of examination and treatment," *id.*, and contends that the "ALJ turned a blind eye to Dr. Katz's findings and opinions," instead putting weight on the assessment of the Commissioner's consulting examiner, Dr. Shtock, those of the State Agency consultants, and the reports of the Workers Compensation examiners, *id.* at 12. In essence, Plaintiff argues that these latter assessments are of limited value, unreliable, and should be afforded little weight. *Id.* at 12–14. In addition, Plaintiff argues that his

debilitating spinal injury in July 2021 effectively "ended his working career" and that he is not "a viable candidate for ongoing, competitive employment." *Id.* at 14. In connection with the latter argument, Plaintiff cites Social Security Ruling 96-9, for the proposition that a determination of RFC must evaluate the individual's "remaining ability to perform *sustained* work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-9P, 1996 WL 374185, at *2 (July 2, 1996) (emphasis added).

The SSA responds by arguing that substantial evidence supported the ALJ's evaluation of the medical evidence. Def. Mem., ECF 7-1, at 18–25. In addition, the SSA contends that Dr. Katz's conclusory statements of disability are not medical opinions and that under the applicable SSA regulations, the ALJ correctly declined to rely on Dr. Katz's non-opinion evidence. *Id.* at 25; *see also id.* at 19–20 (citing various SSA regulations, including 20 C.F.R. § 404.1520b(c)(3)(i) (providing that in a determination or decision, the SSA will not include any discussion of statements by others as to whether a person is disabled because the Commissioner is solely responsible for making that determination in this context)).

Here, the Court finds that the ALJ's determinations through step four of the sequential analysis were "supported by substantial evidence in the record as a whole." *Greek*, 802 F.3d at 375. The ALJ thoroughly analyzed the voluminous medical record and cited substantial evidence for the conclusion that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one of the qualifying Listed Impairments included in the regulations. R. 20–21.[8]

Notwithstanding that conclusion, the Court finds that the ALJ's determination at step five was not supported by substantial evidence and that the case should be remanded. At step five, the Commissioner must determine whether the claimant can perform work that exists in significant numbers in the national economy and, importantly, the Commissioner bears the burden of proof at this step. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2). For the reasons discussed below, the record (1) is insufficient to establish that Plaintiff's limitations are consistent with the expectations of the occupations identified by the VE, and (2) does not establish, by substantial evidence, that the identified positions exist in sufficient numbers in the national economy.[9]

## I. The Record is Insufficient as to Plaintiff's Ability to Perform the Occupations Identified by the VE

There are two problems with the ALJ's findings that Plaintiff can perform the occupations identified by the VE. First, the record is unclear as to whether the ALJ

---

[8] As to the argument that the ALJ failed to properly credit Dr. Katz, this Court finds that the ALJ examined the medical evidence offered by Plaintiff's treating practitioners along with all of the other medical evidence and that the ALJ's determination to reject "opinions related to the claimant's disability" that were in the record was appropriate because, as the ALJ observed, such evidence "is inherently neither valuable nor persuasive to the issue of whether the claimant is disabled under the Social Security Act," an issue reserved for the Commissioner. R. 24 (referencing 20 C.F.R. § 404.1520b).

[9] The Court notes that, at the hearing, the cross-examination of the VE was quite limited and that counsel did not meaningfully challenge the VE's testimony concerning the requirements of the positions, including the expectation of sustained sitting, or the number of positions in the national economy. R. 59. Notwithstanding counsel's failure to challenge the VE's testimony on these points, as discussed throughout this opinion, the Court finds that the record was not fully developed concerning the compatibility of the physical requirements of each proffered position with Plaintiff's RFC and the number of available jobs.

applied the heightened standard now applicable for reliance on the "document preparer" position. Second, the ALJ's findings as to Plaintiff's limitations are somewhat unclear and cannot be squared with the requirements of the identified positions, in that the VE has indicated that, to perform the jobs identified, a worker is generally expected to sit for "6+ hours," R. 306, while the record does not make a clear finding of whether that is consistent with Plaintiff's RFC, *i.e.*, whether Plaintiff can do *sustained* sedentary work. The record is also unclear as to whether Plaintiff could perform all of the identified jobs while using a cane.

**A. Application of Archived EM-24027**

The record does not make clear whether the ALJ applied the Emergency Message, which, as set forth above, imposes a heightened standard for reliance on certain occupations as of June 22, 2024, to support a not disabled finding. Notably, the Emergency Message was issued shortly *after* the vocational expert in this case provided answers to the supplemental interrogatories, but *before* the date of the ALJ's decision. *See* Archived EM-24027 (issued June 22, 2024); R. 306 (VE supplemental interrogatory dated June 5, 2024); R. 14 (ALJ decision dated Oct. 18, 2024). As detailed above, this Emergency Message indicated that an adjudicator cannot rely on one of the 13 identified occupations "without additional evidence from a VS or VE supporting the adjudicator's conclusion that, as the occupation is currently performed," its requirements are consistent with the claimant's RFC and it exists in sufficient numbers in the national economy alone, or in combination with other cited occupations. Archived EM-24027; *see generally Melanie V. v. Comm'r of Soc. Sec.*, No. 23-CV-973S (WMS), 2024 WL 3337924, at *4–5 (W.D.N.Y. July 9, 2024) (finding that the position of "document preparer" as defined in the DOT, which defines it as "someone preparing documents for microfilm," is obsolete, and observing that, after the issuance of EM-

24027, it cannot be relied upon to support a not disabled determination without additional evidence from a vocational expert supporting the adjudicator's conclusion that, as the occupation is currently performed, it exists in the national economy in significant numbers); *Claudette M. S.*, 2026 WL 1024064, at *9–10 (observing that "the ALJ is required under the Emergency Message to obtain additional evidence to determine that occupation's requirements, as the job is presently performed, are consistent with the claimant's RFC and that the position still exists in the national economy in numbers that alone, or in combination with other representative occupations, are significant"); *see also Zacharopoulos*, 516 F. Supp. 3d at 221–24 (discussing obsolescence of the document preparer job as defined in the DOT; collecting cases).

Here, as set forth above, the ALJ sent the VE additional interrogatories to inquire into what jobs an individual similar to Plaintiff could perform, and whether there were any conflicts between the occupational evidence provided and the DOT/SCO, "including any discrepancies regarding manipulative limitations with the right dominant upper extremity and use of a cane for ambulation."[10] R. 305–06. In response, the VE identified "document preparer," DOT #249.587-018, as one of the occupations Plaintiff could perform and expressly stated that (1) the DOT/SCO does not specifically

---

[10] As to limitations, the vocational interrogatory instructed the VE to:

> Assume a hypothetical individual who . . . has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the individual could: frequently reach, handle, finger, and feel with the right dominant upper extremity. The individual could: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and never work at unprotected heights. The individual could occasionally push/pull with the lower extremities and would require the use of a cane for ambulation.

R. 305.

address whether the manipulation needed for these jobs is with the dominant or non-dominant upper extremity; and (2) the DOT/SCO does not address the use of cane for ambulation. *Id.* As to the document preparer position, specifically, the VE noted that the job responsibilities have shifted, away from preparing microfiche and microfilm in favor of scanning, but did not specifically address whether the document preparer occupation, as performed with these changes, was consistent with Plaintiff's RFC and any updated information as to whether these jobs exist in substantial numbers, conclusorily claiming that there are 46,000 such positions. *Id*. The VE further stated, in apparent reference to all three occupations:

> I have cited positions based on my professional training and experience that can be performed with a cane for ambulation. The worker is seated for the majority of the shift (6+ hours) and any items to be carried are minimal (i.e.[,] File folders) and can be carried in the free hand.

*Id*. at 306.

Although the ALJ's decision did discuss the VE's supplemental testimony, the ALJ's decision does not cite the heightened standard and includes only scant factual support for the conclusion that the document preparer position, as currently performed, is consistent with Plaintiff's RFC. Indeed, the only evidence in the record to suggest that Plaintiff might be able to work as a document preparer with his current limitations is the VE's "professional training and experience," which indicates that this position can be performed by an individual using a cane. *Id.* The VE does not explain, factually, what the updated role of document preparer entails, other than to suggest it uses a scanner, or whether it can be performed one-handed by an individual using a cane for ambulation in the event the individual needs to stand up periodically during the workday.

### B. The Record is Unclear as to the Physical Requirements of the Identified Jobs and Compatibility with Plaintiff's RFC

Moving on to the physical requirements of the jobs the VE identified, the supplemental interrogatories state that to perform the positions of document preparer, table worker, and touch-up screener, the worker is "seated for the majority of the shift (6+ hours)." *Id*. at 305, 306. However, the ALJ's opinion does not discuss the VE's supplemental testimony concerning how many hours one must be seated to perform these jobs in connection with whether Plaintiff's RFC is consistent with sitting for more than six hours each day. In the discussion of Plaintiff's RFC, the ALJ noted that Plaintiff "alleged that he can sit for 10 minutes, stand for about 10 to 15 minutes, or walk for half a block before he experiences pain and must take a break." *Id.* at 22. But the ALJ did not make explicit findings as to Plaintiff's sustained tolerance for sitting or standing and the VE was not asked to consider limitations on sitting and standing or a need to frequently change body positions when identifying suitable occupations. *See id.* at 21, 27, 305. Although the ALJ discussed the competing evidence touching upon this topic,[11] the ALJ

[11] In the review of the medical evidence, the ALJ recounts that, in April 2022, the Workers Compensation examiner "restricted [Plaintiff] to sedentary/desk duty with occasional standing," and that Plaintiff's chiropractor noted in February 2023 that he had shown some improvement in his sitting, standing and walking tolerances, but the ALJ described these opinions as "somewhat persuasive" without specifying which descriptions of Plaintiff's symptoms and limitations were being credited or discredited. R. 22–24. In evaluating Dr. Shtock's opinion, which provided, *inter alia*, that Plaintiff has a mild limitation in his ability to sit or stand for long periods, the ALJ did not reject this aspect of his findings, but the ALJ also did not explicitly determine whether Plaintiff could tolerate sitting (or standing) for a long period of time each day. *Id*. at 24–25. At the same time, the ALJ found that the opinions of the State Agency medical consultants were somewhat persuasive but also found that the restriction in that agency's reconsideration determination "endorsing the need to alternate between sitting and standing due to pain, [was] not fully supported by the evidence received at the hearing." *Id*. at 25. All of this discussion ultimately left unresolved the question of how long Plaintiff can realistically stand or sit, or whether his limitations require him to alternate between these positions. The answers to these questions are critical to the analysis of whether Plaintiff's RFC is consistent with available occupations and an evaluation of whether he can perform sustained sedentary work.

ultimately did not resolve the conflicts in the evidence or explain why the RFC did not include limitations on standing or sitting or whether Plaintiff may need to change positions with some frequency. Instead, although the ALJ made a finding that Plaintiff can perform "sedentary" work, there is no further discussion of the amount of time he may be able to stand or sit each day or whether he may need to change positions; the decision is, accordingly, unclear as to whether Plaintiff can perform *sustained* sedentary work. *Id.* at 20–26. In turn, the hypotheticals posed to the VE assumed sedentary work (which generally requires approximately six hours of sitting and two hours of standing, *see supra* note 7), without further inquiry concerning Plaintiff's possible limitations vis-à-vis standing and sitting. *Id*. at 305–06. Accordingly, "the Court cannot determine whether or how" the ALJ intended for the VE to address this possible limitation. *Samuel N. v. Comm'r of Soc. Sec.*, No. 21-CV-6414-FPG, 2023 WL 3962821, at *3 (W.D.N.Y. June 13, 2023) (quotation marks omitted). Given the totality of the record here, the Court finds that "[t]he ALJ's error was harmful because it undermines the testimony of the vocational expert on which [the ALJ] relied in concluding that Plaintiff was not disabled." *Id.* at *4; *see also Slattery v. Colvin*, 111 F. Supp. 3d 360, 375 (W.D.N.Y. 2015) ("A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.").

The evidence adduced here was insufficient to meet the heightened standard mandated by the Emergency Message for consideration of whether Plaintiff could perform the document preparer job. For the same reasons (although without application of the heightened standard under the Emergency Message), the record is insufficient to

show whether Plaintiff could perform the job requirements of a table worker[12] or touch-up screener[13] due to the amount of time he would likely be required to sit. Moreover, as to all three positions, there is incomplete evidence as to whether a worker can change positions while still performing these jobs and, if standing, perform the jobs while also using a cane.

* * * * *

For these reasons, the Court finds that the VE's testimony regarding the document preparer position was conclusory and the record is incomplete as to whether Plaintiff could perform the three jobs identified by the VE in light of unclear findings regarding his ability to performed sustained sedentary work, and whether he can use a cane if standing while performing all of the identified jobs. *See Melanie V.*, 2024 WL 3337924, at *5 (rejecting "conclusory testimony as to [the] obsolescence of document

---

[12] The DOT defines the job of "table worker" (DOT #739.687-182) as follows: "Examines squares (tiles) of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles." U.S. Dep't of Lab., Dictionary of Occupational Titles, Benchwork Occupations, *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT07D (last visited Sept. 22, 2026).

[13] The DOT defines the job of "touch-up screener" (DOT #726.684-110) as follows:

> Inspects printed circuit board (PCB) assemblies for defects, such as missing or damaged components, loose connections, or defective solder: Examines PCB's [sic] under magnification lamp and compares boards to sample board to detect defects. Labels defects requiring extensive repairs, such as missing or misaligned parts, damaged components, and loose connections, and routes boards to repairer. Performs minor repairs, such as cleaning boards with freon to remove solder flux; trimming long leads, using wire cutter; removing excess solder from solder points (connections), using suction bulb or solder wick and soldering iron; or resoldering connections on PCB's [sic] where solder is insufficient. Maintains record of defects and repairs to indicate recurring production problems. May reposition and solder misaligned components. May measure clearances between board and connectors, using gauges.

U.S. Dep't of Lab., Dictionary of Occupational Titles, Benchwork Occupations, *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT07B (last visited Sept. 22, 2026).

preparer" and "the number of order clerk and table worker positions in the national economy" and finding that, by adopting the VE's opinion, "the ALJ lacked proof of other work that Plaintiff could perform given her RFC" and that the "Commissioner's burden thus was not met"). Accordingly, the Court is not "satisfied that the ALJ . . . completely developed the administrative record." *Kelly*, 2024 WL 5120051, at *9.

In addition, as discussed above, the record is unclear as to whether the ALJ applied the heightened standard required under the Emergency Message in relying on the document preparer position. *See, e.g.*, *Justina O. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00610 (EAW), 2026 WL 111301, at *4 (W.D.N.Y. Jan. 15, 2026) (remanding for further administrative proceedings in case decided a short time before the effective date of the Emergency Message due to reliance on the document preparer position). Consequently, this Court cannot conclude that the ALJ's decision was based on the correct legal standard, *Greek*, 802 F.3d at 374, and that the Commissioner's factual findings were "supported by substantial evidence in the record as a whole," *id.* at 375.

**II. Available Number of Jobs in the National Economy**

Under the SSA regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b). "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy.'" *Id.* § 404.1566(b); *see also id.* § 416.966(b). Although there is no "bright line test as to the threshold number of jobs that is considered 'significant' for purposes of the Act," courts in the Second Circuit have typically found between 9,000 and 10,000 jobs "to be sufficiently 'significant' to meet the Commissioner's burden." *Sanchez v. Berryhill*, 336 F.

Supp. 3d 174, 177 (W.D.N.Y. 2018) (collecting cases); *see also Amy Marie H. v. Comm'r of Soc. Sec.*, No. 1:25-CV-00082 (JGW), 2026 WL 2665448, at *13 (W.D.N.Y. Sept. 10, 2026) (collecting cases). At the same time, the Second Circuit has observed that the "Commissioner need show only one job existing in the national economy that [a claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (summary order); *see* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b).

Here, in the VE's supplemental interrogatory responses, she identified the following numbers of jobs for the three positions identified: document preparer (46,000 U.S. jobs), table worker (2,700 U.S. jobs), and touch-up screener (2,600 U.S. jobs). R. 305. It has been observed that reported cases considering the number of document preparer positions in the national economy "demonstrate that this figure is subject to wildly irrational variation." *Zacharopoulos*, 516 F. Supp. 3d at 222 (collecting cases estimating the number of document preparer jobs with ranges spanning from 2,808,100 to 10,000 jobs); *see also Corey S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-0678 (ML), 2021 WL 2935917, at *12 (N.D.N.Y. July 13, 2021) (remanding for further proceedings "[i]n light of the overwhelming evidence that the document preparer position, as defined in the [DOT], is obsolete in the national economy" and concluding "that the ALJ could not reasonably rely solely on the VE testimony that there were approximately 45,000 document preparer positions in the national economy")).

Given the lack of factual granularity in the record about what specific job functions a document preparer does these days and conclusory supplemental testimony regarding the number of available jobs, the Court joins the many other courts that have expressed skepticism about the prevalence of the document preparer position in this time of extraordinarily rapid changes in the job market surrounding computers, publishing, and generation of documents. *See, e.g.*, *Zacharopoulos*, 516 F. Supp. 3d at 222

(collecting cases). Moreover, as discussed above, the record is unclear as to whether the ALJ applied the heightened standard now needed to establish that the document preparer position is available in significant numbers. Accordingly, the Court finds the record incomplete as to the number of jobs available for "document preparers" in our modern tech economy.

As to the role of touch-up screener, the ALJ's written decision stated that there were 26,000 touch-up screener jobs available, a clear error when compared to the VE's supplemental written interrogatory responses and testimony at the hearing.[14] *Compare* ALJ Opinion, R. 27 (indicating 26,000 touch-up screener jobs) *with* Vocational Interrogatory, *id.* at 305 (indicating 2,600 such jobs in the U.S.) *and* VE Hearing Testimony, *id.* at 57 (2,600 jobs). In addition, the VE indicated a similar number of table worker positions, testifying that there were 2,700 such jobs in the United States. *Id.* at 305. Accordingly, for these two positions, the VE's written testimony suggests that approximately 5,300 such jobs exist in the nation in total. Putting the Court's skepticism to the side about whether those numbers are accurate (particularly the number offered for table workers, who are apparently tasked with examining "squares (tiles) of felt-based linoleum material" as they pass by along a conveyer belt, *see supra* note 12), 5,300 is not a sufficient number to show that these positions exist in significant numbers in the national economy. *See Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 231 (N.D.N.Y. 2015) (finding that 5,160 jobs nationally is not a significant number). Accordingly, the Court finds that the Commissioner has not met its burden, at step five

[14] The Court recognizes that this may be a typographical error or a misinterpretation of the VE's handwriting in the supplemental interrogatory. Either way, an error of this magnitude in the estimate of available "touch-up screener" positions is material to the analysis of whether there are sufficient jobs in the national economy when the VE's testimony indicated a mere 2,600 positions. R. 305.

of the analysis, "to show that other work exists in significant numbers in the national economy that the claimant can do." *Rubin*, 116 F.4th at 148 (quotation marks omitted); *see also, e.g.*, *Sackett v. O'Malley*, No. 21-CV-3248 (LGD), 2024 WL 2034712, at *4–5 (E.D.N.Y. Apr. 30, 2024) (finding vocational expert testimony unreliable and rejecting the ALJ's "'unblinking acceptance of conclusory opinions by [the] vocational expert,'" where expert had testified that there were 46,000 document preparer positions in the national economy as well as 3,200 table worker positions, and 1,300 touch-up inspector positions (quoting *Zacharopoulos*, 516 F. Supp. 3d at 225)).

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is vacated, and this action is remanded to the Commissioner for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
September 24, 2026

Taryn A. Merkl
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE